HENIZE, APPELLEE, *v.* GILES, ADMR., OHIO BUREAU OF EMPLOYMENT SERVICES, ET AL., APPELLANTS.

[Cite as Henize *v.* Giles (1986), 22 Ohio St. 3d 213.]

(No. 85-545—Decided March 12, 1986.)

*Howard D. Fields* and *Rural Legal Aid Society,* for appellee, Barbara Henize.

*Anthony J. Celebrezze, Jr.,* attorney general, *Patrick A. Devine* and *George H. Calloway,* for appellant Administrator, Ohio Bureau of Employment Services.

*Murphey, Young & Smith, David J. Young* and *Kevin R. McDermott,* for appellant Hercules Trouser Company, Inc.

*Eugene P. Whetzel,* urging reversal for *amici curiae,* Ohio Manufacturers' Association and National Federation of Independent Business.

*Albert L. Bell,* urging affirmance for *amicus curiae,* Ohio State Bar Association.

*Stephen H. Olden, R. Collins Owens* and *Sue Livensparger,* urging reversal for *amici curiae,* Legal Aid Societies of Cincinnati and Columbus.

*Martin, Eichenberger & Baxter Co., L.P.A.,* and *Stephen D. Martin,* urging reversal for *amicus curiae,* Ohio Education Association.

*Jaffy, Livorno, Kaufmann & Arnett Co., L.P.A., Steward R. Jaffy* and *Henry A. Arnett,* urging reversal for *amicus curiae,* Ohio AFL-CIO.

*McCutchan, Schmidt, Birkhimer & Druen* and *Clenzo B. Fox,* urging reversal for *amicus curiae,* Gates-McDonald Company, Inc.

*Lackey, Nusbaum, Harris, Reny & Torzewski, Gerald B. Lackey; Jordan Rossen* and *Richard W. McHugh,* urging reversal for *amicus curiae,* International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, U.A.W.

CELEBREZZE, C.J. The primary issue raised in this appeal is whether the representation of an employer by an actuarial firm, through a non-lawyer, at a benefits hearing before a referee of the Unemployment Compensation Board of Review constitutes the unauthorized practice of law.

For the reasons that follow, we reverse the judgment of the court of appeals and hold that interested parties or their non-lawyer representatives appearing at administrative unemployment compensation hearings before the Ohio Bureau of Employment Services and the Unemployment Compensation Board of Review are not engaged in the unauthorized practice of law.

At the outset, we note that federal law mandates that state unemployment programs provide an "[o]pportunity for a fair hearing, before an impartial tribunal * * *." Section 503(a)(3), Title 42, U.S. Code. This statute has been interpreted to impose requirements which are the same as constitutional procedural due process requirements. *Camacho* v. *Bowling* (N.D. Ill. 1983), 562 F. Supp. 1012, 1020. Hence, any judicial analysis of the state's hearing procedures in this case must be conducted with a fundamental recognition that under the Fourteenth Amendment the cornerstone of due process, in the procedural sense, is the opportunity for a fair hearing. *Boddie* v. *Connecticut* (1971), 401 U.S. 371, 378.

We believe that R.C. Chapter 4141 faithfully contemplates that parties to these administrative proceedings have the right to a fair but informal hearing.[1] Pursuant to the General Assembly's goal of providing a mean-

---

[1] R.C. 4141.28(J) requires that parties to a claim for unemployment benefits be given a fair hearing before the board as follows:

"When an appeal from a decision on reconsideration of the administrator or deputy is taken, all interested parties shall be notified and the board or a referee shall, *after affording*

ingful hearing, the board is granted wide discretion in the conduct of its hearings in order to ascertain the facts and determine the claimant's entitlement to benefits. R.C. 4141.28(J).[2] The board is not bound by evidentiary or procedural rules in the conduct of hearings but rather is constrained by constitutional limits and statutory controls which safeguard the rights involved.[3]

We note that board referees and board members are not statutorily required to be attorneys. Consonant with R.C. 4141.07[4] and pursuant to the authority granted by R.C. 4141.06, the board has promulgated a rule which similarly authorizes non-lawyer representation during the hearing:

"[Ohio Adm. Code] *4146-19-01 Representation before referee or board*

"At any proceeding before a Referee or the board, any interested party may appear in person, by counsel, or an authorized representative."

This rule reflects the board's longstanding policy of permitting non-lawyers to assist parties in the presentation of their claims. The proceedings are designed and function as alternatives to judicial dispute resolution so that the services of a lawyer are not a requisite to receiving a fair hearing and just decision.

In this regard, claimants are traditionally accompanied by friends, co-workers, family, and union representatives, or are assisted by legal aid societies which may provide paralegals without charge to assist the worker in the presentation of the claim.[5] Similarly, employers have usually

---

*such parties reasonable opportunity for a fair hearing,* affirm, modify, or reverse the findings of fact and the decision of the administrator or deputy in the manner which appears just and proper. * * *" (Emphasis added.)

[2] R.C. 4141.28(J) continues, in pertinent part, stating:
"In the conduct of such hearing or any other hearing on appeal to the board which is provided in this section, the board and the referees shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure. The board and the referees shall take any steps in such hearings, consistent with the impartial discharge of their duties, which appear reasonable and necessary to ascertain the facts and determine whether the claimant is entitled to benefits under the law. * * *"

[3] Pursuant to R.C. 4141.06 the board has also adopted Ohio Adm. Code 4146-7-02, which seeks to fulfill the legislature's goal of ensuring a fair hearing to interested parties as follows:
"* * * The Board or Referee conducting a proceeding may examine the interested parties and other witnesses, and each interested party and his representative shall have all rights of fair hearing, including the right of examination and cross-examination of witnesses, the right to present testimony and other evidence, the right to inspect and examine documents, files, reports and records received in evidence, the right to present testimony and other evidence in explanation and rebuttal, the right to subpoenas for witnesses and documentary evidence and the right to present argument. * * *"

[4] At the time this cause arose, R.C. 4141.07 provided in relevant part for representation "* * * by counsel or other authorized agent * * *."

[5] Several of the *amici curiae* inform us that they routinely furnish claimants with the services of non-lawyers which assist and represent the worker at board hearings.

relied on their own personnel staff or self-representation to contest the right of the claimant to participate.[6] Over the years, an increasing number of employers have utilized service companies to provide management support of various payroll, tax and employee benefit operations. Economy of scale and the technical expertise provided by such companies in the area of unemployment compensation have enabled employers, both large and small, to utilize the assistance of unemployment service specialists to manage their benefit programs. As an incidental portion of such service, agents are provided to attend board hearings as representatives of the employer. These agents are there to assure that the board has the appropriate personnel records, staff, and other documents present at the hearing and to assist in the fact-finding process during the referee's claim review. The role of such lay participants, as we perceive it, is not to render legal advice, nor to otherwise practice law by providing interpretations of board orders. Rather, the purpose of their participation is to facilitate the hearing process by serving as an adjunct to the claimant or employer in the sharing of their respective versions of the circumstances attendant to the claim.

Although parties may choose to be represented by lawyers in these proceedings, the hard reality is that few employ legal counsel. This is due in part to the interest at stake,[7] the regulations which understandably limit attorney fees[8] and, most importantly, the fact that attorneys are simply not required in most of these claim reviews. This is because of the informality of the proceedings coupled with the recognition that, in most instances, a formal presentation of legal argument is not needed. Instead, the hearing is designed to be an administrative information gathering tool serving as an alternative to judicial resolution of every contested claim.

Unquestionably, this court is the body which ultimately controls the practice of law in this state. Section 2(B)(1)(g), Article IV of the Ohio Constitution; R.C. 4705.01; *Melling* v. *Stralka* (1984), 12 Ohio St. 3d 105; *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149, 151 [23 O.O.2d 445]. With this authority is the concomitant responsibility to protect the public by preventing the unauthorized practice of law, while at the same time not exercising this authority so rigidly that the public good suffers.

---

[6] Actuarial companies, such as *amicus* Gates-McDonald Company, Inc., provide similar representation services for their employer clients.

[7] The average unemployment claim is reported by OBES to be less than $3,000.

[8] Ohio Adm. Code 4146-19-03 limits attorney fees to ten percent of the benefits recovered by a claimant. Consequently, few attorney are anxious to take such cases.

The public certainly has an interest in maintaining a claims system that works well at a reasonable cost. In fact, prohibition of non-attorney representation by union representatives and legal aid employees in these cases could seriously impair meaningful access to the system on the part of claimants and undermine their right to a fair hearing.

In *Cowern* v. *Nelson* (1940), 207 Minn. 642, 647, 290 N.W. 795, 797, the court recognized the responsibility of the judiciary not to take a one-dimensional approach in the area of regulating the unauthorized practice of law: "it is the duty of this court so to regulate the practice of law and to restrain such practice by laymen in a common-sense way in order to protect primarily the interest of the public and not to hamper and burden such interest with impractical technical restraints no matter how well supported such restraint may be from the standpoint of pure logic." (Quoted with approval and followed in *Hunt* v. *Maricopa Cty. Emp. Merit Sys. Comm.* [1980], 127 Ariz. 259, 263, 619 P. 2d 1036, 1040.)

In this regard we must remember that the executive branch has the right to control the management and operation of its agencies. In reaching our decision, we also deem it significant that other states have allowed lay representation at unemployment hearings even though it could arguably be viewed as the practice of law.[9] For example, the recent decision of the Supreme Court of Michigan in *State Bar of Michigan* v. *Galloway* (1985), 422 Mich. 188, 369 N.W. 2d 839, settled a conflict between appellate courts in that state by similarly holding that non-lawyers may represent employers at unemployment compensation hearings.

The following quote from *State* v. *Dinger* (1961), 14 Wis. 2d 193, 109 N.W. 2d 685 (which allowed brokers to engage in certain legal practices), is representative of the reasoning of some of our sister states which have allowed lay practice in certain instances and is instructive to the case *sub judice*:

"Further, although we have the power to declare void Rule, sec. R.E.B. 5.04, insofar as it affects the practice of law, we do not use the power in this instance, because we, ourselves, consider the rule a salutary one which in its essentials continues a practice of laymen which we have long tacitly permitted and which has worked reasonably well. The Rule has not enlarged the practice of the law by laymen which we have hitherto permitted. When we consider that such practices should be discontinued it will be time for us to use our power. It is not required now." *Id.* at 206, 109 N.W. 2d at 692.

---

[9] One recent national report notes as follows:

"Most States presently allow the parties to be represented by agents or other non-lawyers of their choosing. Laypersons, either union representatives or other non-lawyers, have become quite proficient in the handling of U.I. [Unemployment Insurance] cases." Morris, On Appeal: Claimant Advocacy and Full and Fair Hearings (1980), 3 Unemployment Compensation: Studies and Research 665, 667.

In this vein, the National Commission on Unemployment Compensation has recommended that state programs "* * * permit all parties to a hearing to have representatives of their own choosing, irrespective of whether such representatives are members of the bar." National Commission on Unemployment Compensation, Unemployment Compensation: Final Report (1980) 120. Cf. *State* v. *Dinger* (1961), 14 Wis. 2d 193, 109 N.W. 2d 685; *Hunt* v. *Maricopa Cty. Emp. Merit Sys. Comm.* (1980), 127 Ariz. 259, 619 P. 2d 1036; *Cowern* v. *Nelson* (1940), 207 Minn. 642, 290 N.W. 795; *Cultum* v. *Heritage House Realtors* (1985), 103 Wash. 2d 623, 694 P. 2d 630.

The finding is inescapable that because of the character of the proceedings in light of the interest at stake, lay representation does not pose a hazard to the public in this limited setting. Our conclusion is further bolstered by the clear recognition that lay representation has been the practice since the inception of Ohio's unemployment compensation program in 1936.

Our decision today does not reach nor permit the rendering of legal advice regarding unemployment compensation laws or board orders. Rather, our narrow holding merely permits lay representation of parties to assist in the preparation and presentation of their cause in order to facilitate the hearing process.[10] We believe board hearings should not be turned into

---

[10] *Amicus* Ohio State Bar Association encourages us to adhere to past precedent concerning the definition of the practice of law. *E.g., State, ex rel. Nicodemus,* v. *Indus. Comm.* (1983), 5 Ohio St. 3d 58; *In re Unauthorized Practice of Law in Cuyahoga Cty.* (1963), 175 Ohio St. 149 [23 O.O.2d 445]; *Goodman* v. *Beall* (1936), 130 Ohio St. 427 [5 O.O. 52]; *Land Title Abstract & Trust Co.* v. *Dworken* (1934), 129 Ohio St. 23 [1 O.O. 313].

We do not find our past holdings to be at odds with today's decision because the case *sub judice* is distinguishable from past precedent, the holdings of which we conclude are correct but inapposite. Undeniably the proceedings before the board are similar in some respects to those of other government hearings where we have held that representatives of parties must be licensed attorneys.

In this instance, however, we have noted several considerations which combine to support a finding that the matter is materially different and ripe for a narrow exception. For example, we previously cited in this opinion the limited economic interest at stake as well as the low attorney fees allowed. A low ceiling on attorney fees in cases brought before the Veterans' Administration prompted the United States Supreme Court to recently note the legitimate government interest in providing a fair, informal, and nonadversarial claims system: "* * * [T]he system for administering benefits should be managed in a sufficiently informal way that there should be no need for the employment of an attorney to obtain benefits to which a claimant was entitled, so that the claimant would receive the entirety of the award without having to divide it with a lawyer. * * * While Congress has recently considered proposals to modify the fee limitation in some respects, a Senate Committee report in 1982 highlighted that body's concern 'that any changes relating to attorneys' fees be made carefully so as not to induce unnecessary retention of attorneys by VA claimants and not to disrupt unnecessarily the very effective network of nonattorney resources that has evolved in the absence of significant attorney involvement in VA claims matters.' " *Walters* v. *National Assn. of Radiation Survivors* (1985), ___ U.S. ___, 87 L. Ed. 2d 220, 233.

We are also cognizant of and reiterate the fact that the current system has apparently functioned fairly and efficiently for a half century while still providing for the basic constitutional right to counsel. Additionally, the standard retainer plus hourly fee of attorneys would quite likely be too expensive for parties if the ceiling on fees was removed. Furthermore, "* * * few claimants can retain experts who are familiar with the * * * intricate * * * and * * * complex * * * [unemployment insurance] system. In facing their well-equipped adversaries, claimants are crippled by inadequate resources, an inadequate understanding of the variables determining their claims, and a lack of experience in the procedures for defending benefit entitlements. * * * Legal services attorneys are generally unavailable because their services are limited to clients at or below the poverty level, and their limited resources are already strained by heavy caseloads and inadequate funding." Morris, On Appeal, *supra,* at 665-666.

Many of the same considerations, upon which we base our decision today, led the United States Supreme Court to observe in *Walters, supra,* at 236: " 'The result [of mandating

adversarial proceedings since they are legislatively designed to function as an informal mechanism through which the referee, in a participatory capacity, ascertains the facts involved.[11] In light of the serious detriment to claimants and employers which would result if the current system was unnecessarily disturbed, we deem this to be an appropriate and *limited setting* in which to authorize lay representation by granting due deference to the statute and agency rule. The foremost issues are whether the parties received a fair hearing and whether the result is lawful, reasonable, and supported by the record. We believe Ohio's trial courts, within their scope of statutory review, can adequately safeguard the parties' respective interests if lay representation is allowed at the board hearing level. In the unlikely event that the record is a sham, the proceedings are overly tainted, the result unfair, or the decision is not supported by the evidence, the reviewing court will remedy the error by finding the decision to be unreasonable, against the manifest weight of the evidence, or unlawful. R.C. 4141.28(O).[12]

Lastly, we can not perceive how this particular claimant's right to a fair hearing has been denied simply because her employer chose not to retain legal counsel. To the contrary, the record demonstrates the claimant was afforded adequate due process safeguards and was not prejudiced. She exercised her right to be represented by legal counsel and was able to fully present her evidence and testimony. Her attorney effectively participated in the examination of employer witnesses, questioned the ad-

---

representation exclusively by attorneys] may be to turn what might have been a short conference leading to an amicable result into a protracted controversy. * * *' "

[11] Concerning the role of the referee at unemployment compensation hearings, it has been stated that "[a] fair hearing is not an end in itself. It is the means to the overall objective: paying benefits to eligible claimants and denying benefits to those not eligible as the law prescribes. This objective dictates the character of UI [unemployment insurance] appeals hearings. The referees' responsibility to ensure that benefits are paid or denied pursuant to State law obliges them to take an active role in getting the facts. Their role is distinguished from that of a judge who acts as an umpire, deciding cases only on the basis of facts established by contesting parties. A judge does not ordinarily make independent factual investigations. In contrast, referees cannot assume the same passive role or rely on the parties alone to establish the facts and still meet their responsibility to the State.

"The referee must participate directly in the questioning, subpoena witnesses and records, and order investigations whenever necessary to get the facts." Rubin, The Appeals System, 3 Unemployment Compensation: Studies and Research, *supra*, 625, 626.

[12] Judicial oversight of board decisions is specifically provided in R.C. 4141.28(O) which states in pertinent part:

"The board * * * shall * * * file with the clerk a certified transcript of the record of the proceedings before the board * * *. The appeal shall be heard upon such record certified by the board * * *. If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise such court shall affirm such decision. * * *"

missibility of certain evidence, and argued his client's position to the board.

Based on the foregoing, we reverse the judgment of the court of appeals and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, LOCHER, HOLMES, C. BROWN, DOUGLAS and WRIGHT, JJ., concur.